# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTY RALEY, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-08-0376-HE |
| | ) | |
| HYUNDAI MOTOR COMPANY, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Misty Raley was injured when the 1999 Hyundai Sonata she was driving

rolled over and she was ejected.  She filed this lawsuit individually and as the parent and next

friend of C.G., W.G., and C.A.G. against Hyundai Motor Company and Hyundai Motor

America (collectively "Hyundai"), asserting various products liability and negligence claims.

The defendants have filed a motion for partial summary judgment, contending that the

plaintiff's claims based on the glass used in the side windows of the vehicle are preempted.[1]

The facts material to the preemption issue are undisputed.[2]  The plaintiff was seriously

injured when she lost control of her Sonata while driving on Interstate 44 in Oklahoma City.

The vehicle struck several sand barrels, went down a steep embankment and rolled over.  Ms.

---

[1] *"Congress has the power to preempt state law under Article VI of the Supremacy Clause."*
<u>*Choate v. Champion Home Builders Co.*</u>*, 222 F.3d 788, 791 (10th Cir. 2000).  Federal law preempts state law in three circumstances – when Congress "define[s] explicitly the extent to which its enactments pre-empt state law," where state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively," and when state law "actually conflicts with federal law."  Id. at 792.*

[2] *Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).*

Raley was ejected. She asserts she would have remained in the car and avoided some of her injuries if the side windows had not been made of tempered glass.

The defendants contend that the plaintiff's window glazing claims[3] are barred by implied conflict preemption. They argue they cannot be held liable for defectively designed windows because the windows in the Sonata met the requirements of Federal Motor Vehicle Safety Standard 205 ("FMVSS 205").[4] The plaintiff responds that FMVSS 205 does not bar their state law claims, but merely sets a minimum safety standard. They claim compliance with the federal regulation does not exempt the defendants from common-law liability for a defective product.

The National Highway Traffic Safety Administration ("NHTSA") promulgated FMVSS 205 under the Federal Safety Act ("FSA"). O'Hara v. General Motors Corp., 508 F.3d 753, 756 (5th Cir. 2007). FMVSS 205, which incorporates by reference the American National Standard for Safety Glazing Materials Z26.1 ("ANSI/SAE Z26.1-1996"), specifies the glazing materials that can be used in motor vehicles.[5] The regulation is intended to "reduce injuries resulting from impact to glazing surfaces, to ensure a necessary degree of transparency in motor vehicle windows for driver visibility, and to minimize the possibility

_____

[3]*The plaintiff contends that, instead of tempered glass, the defendants should have used laminated glass or a glass-plastic glazing material in the Sonata's side windows.*

[4]*Regulations promulgated by an agency pursuant to Congressional authority have the same preemptive effect as statutes.* Choate, *222 F.3d at 792.*

[5]*Although the plaintiff's vehicle was a 1999 model, the pertinent provisions of FMVSS 205 have not changed. See* O'Hara, *508 F.3d at 756.*

of occupants being thrown through the vehicle windows in collisions." 49 C.F.R. § 571.205, S2. Both tempered glass and laminated glass are approved glazing materials under FMVSS 205.[6] The ANSI standards state that "[o]ne safety glazing material may be superior for protection against one type of hazard, whereas another may be superior against another type .... [N]o one type of safety glazing material can be shown to possess the maximum degree of safety under all conditions, against all conceivable hazards." Defendants' Exhibit 3, ANSI/SAE Z26.1-1996, § 2.2

The Supreme Court considered the preemptive effect of another Federal Motor Vehicle Safety Standard – FMVSS 208– in Geier v. American Honda Motor Co., Inc., 529 U.S. 861 (2000).[7] That standard "required auto manufacturers to equip some but not all of their 1987 vehicles with passive restraints." Id. at 864-65. The court concluded that the National Traffic and Motor Vehicle Safety Act of 1966, combined with FMVSS 208, "pre-empt[ed] a state common-law tort action in which the plaintiff claim[ed] that the defendant auto manufacturer, who was in compliance with the standard, should nonetheless have

---

[6]*Tempered glass can be used anywhere other than in the windshield, while laminated glass is approved for use throughout a vehicle. See ANSI/SAE Z26.1-1996, Table 1 (Items 1 & 2).*

[7]*The Court concluded that FMVSS 208 was not expressly preempted by the National Traffic and Motor Vehicle Safety Act, the predecessor to the FSA, and then proceeded to determine whether a tort action would barred because of implied conflict preemption. Geier, 529 U.S. at 868-69. See Choate, 222 F.3d at 795 ("Implied preemption exists when (1) state law regulates conduct in a field Congress intended the Federal Government to occupy exclusively, or (2) when state law actually conflicts with federal law. . . . Conflict preemption exists in either of two situations: (1) when it is impossible for a private party to comply with both state and federal requirements," or (2) when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.) (internal quotations omitted)).*

equipped a 1987 automobile with airbags." *Id.* at 865. The Court noted that the FSA

contains both an express preemption provision and a saving clause that "preserves those

actions that seek to establish greater safety than the minimum safety achieved by a federal

regulation intended to provide a floor." *Id.* at 870. However, it determined that "the saving

clause (like the express pre-emption provision) does <u>not</u> bar the ordinary working of conflict

pre-emption principles." *Id*. at 869. After reviewing the history of FMVSS 208, the Court

stated:

> The Department of Transportation's (DOT's) comments, which accompanied
> the promulgation of FMVSS 208, make clear that the standard deliberately
> provided the manufacturer with a range of choices among different passive
> restraint devices. Those choices would bring about a mix of different devices
> introduced gradually over time; and FMVSS 208 would thereby lower costs,
> overcome technical safety problems, encourage technological development,
> and win widespread consumer acceptance-all of which would promote FMVSS
> 208's safety objectives.
> .…
>
> In sum, as DOT now tells us through the Solicitor General, the 1984 version
> of FMVSS 208 embodies the Secretary's policy judgment that safety would
> best be promoted if manufacturers installed alternative protection systems in
> their fleets rather than one particular system in every car.

 *Id*. at 874-75, 881 (internal quotations omitted).

The question presented here is similar – whether a federal safety standard preempts

a common law suit alleging that a manufacturer's use of a permitted technology was unsafe.

However, the court agrees with the Fifth Circuit that there are distinctions between FMVSS

208 and FMVSS 205 which lead to a different conclusion as to the preemptive effect of the

standard.

In O'Hara the Fifth Circuit considered the preemptive effect of FMVSS 205. The plaintiffs in that case sued General Motors Corporation ("GM") seeking to recover for injuries sustained by their daughter, who was partially ejected from a 2004 Chevrolet Tahoe during a rollover accident. The plaintiffs claimed that GM's use of tempered glass in the side windows of the Tahoe was unreasonably dangerous and that advanced glazing would have decreased the likelihood of passenger ejection.

The Fifth Circuit initially determined the federal policy expressed by FMVSS 205. If the NHTSA regulation was intended only to create a minimum safety standard, then states were "free to adopt common law rules which require[d] a greater level of safety." O'Hara, 508 F.3d at 759. However, if the "federal safety standard deliberately [left] manufacturers with a choice among designated design options in order to further a federal policy, a common law rule which would force manufacturers to adopt a particular design option [would be] preempted." Id.

The court determined that, on its face, the regulation "set[] a safety 'floor' to ensure that the glazing materials used by manufacturers meet certain basic requirements." Id. at 760. Missing from the text of FMVSS 205 were the "factors-detailed implementation timelines, full vehicle testing procedures and 'options' language," found in FMVSS 208, which "strongly support[] the conclusion that it [FMVSS 208] expressed a federal policy which would be frustrated by lawsuits seeking to establish common law rules to the contrary." Id.

The Fifth Circuit also noted that, unlike the agency's statements interpreting FMVSS

208, which made "NHTSA's occupant crash protection policy clear," *id.*,[8] "[t]he NHTSA Final Rule commentary on the 2003 version of FMVSS 205 at issue here ... is short (only eight pages in the Federal Register) and does not discuss NHTSA's rollover protection policies." *Id.* at 761. Missing also from the commentary was language "indicating that NHTSA intended to 'preserve the option' of using tempered glass in side windows, or that preserving this option would serve the safety goals of FMVSS 205." *Id.*

The appellate court then turned to other statements by NHTSA to see if they expressed federal safety policies which would be frustrated by allowing the plaintiffs' suit to proceed. The court focused on a Notice of Withdrawal the agency issued in the 1990's when it decided not to amend FMVSS 205 to require advanced glazing in side windows. While it found the Notice of Withdrawal to be "the most relevant and authoritative NHTSA commentary raised by the parties," the Fifth Circuit concluded that "nothing in the Notice of Withdrawal undermines the conclusion, drawn from the text and Final Rule commentary, that FMVSS 205 is a minimum safety standard." *Id.* at 763.

In reaching that conclusion the Fifth Circuit relied on parallels between NHTSA's withdrawal of rulemaking and the Coast Guard's decision not to require propeller guards on all boats, which was the subject of  Sprietsma v. Mercury Marine, 537 U.S. 51 (2002). The Supreme Court held in Sprietsma that the agency's decision not to take regulatory action with

---

[8]*The Fifth Circuit commented in* O'Hara *that "[t]he* Geier *Court concluded that a common law rule imposing liability for not installing airbags in all their cars would frustrate NHTSA's clearly stated and safety-based policy of encouraging manufactures to introduce airbags gradually in order to win over a skeptical public."* O'Hara, *508 F.3d at 761.*

respect to propeller guards did not preempt a state common-law tort action based on a manufacturer's failure to install such a safety device. The Court stated that the "Coast Guard's decision not to require propeller guards ... [did] not convey an 'authoritative' message of a federal policy against propeller guards" and that "nothing in its official explanation [for not requiring propeller guards on all boats] would be inconsistent with a tort verdict premised on a jury's finding that some type of propeller guard should have been installed on this particular kind of boat equipped with respondent's particular type of motor." *Id*. at 67.

The Fifth Circuit noted that the Coast Guard's principal reasons for not taking regulatory action were that "available accident data did not meet the stringent criteria for federal regulation,[9] ... limitations of existing propeller guard technology, including the lack of a single, universally applicable guard, [and] ... the cost of retrofitting millions of boats would certainly be a major economic consideration." O'Hara, 508 F.3d at 762 (internal quotations omitted). Those were similar, the court found, to the grounds for NHTSA's Notice of Withdrawal – cost concerns and minor safety issues. Another similarity cited by the Fifth Circuit was NHTSA's subsequent conduct – "like the Coast Guard, NHTSA has continued to study advanced glazing as part of its rollover protection program." *Id.* These parallels, which the appellate court found to be "compelling," warranted the conclusion that

---

[9]*"Agency research revealed that propeller guards 'might prevent penetrating injuries but increase the potential for blunt trauma caused by collision with the guard.'"* O'Hara, *508 F.3d at 762 (quoting* Sprietsma, *537 U.S. at 61).*

"NHTSA's Notice of Withdrawal 'does not convey an authoritative message of a federal policy against' advanced glazing in side windows ." *Id.* at 762-63 (quoting Sprietsma, 537 U.S. at 67)

The Tenth Circuit applied a similar analysis to that used in Geier and O'Hara when considering the preemptive effect of provisions of the National Manufactured Housing Construction and Safety Standards Act of 1974 ("Manufactured Housing Act") and regulations promulgated under it. In Choate v. Champion Home Builders Co., 222 F.3d 788 (10th Cir. 2000), the plaintiffs asserted a products liability claim against two companies based on their failure to provide "battery-powered smoke detection in the [plaintiffs'] manufactured home, or to warn that the smoke detector would not work if there was a loss of power ...." *Id.* at 790-91. Finding Geier to be "strongly instructive on the issues raised," *id.* at 793, the Tenth Circuit initially concluded that the plaintiffs' claim was not expressly preempted by the National Manufactured Housing Act.[10] It then proceeded to determine whether the claim was impliedly preempted – "whether the Oklahoma standard urged by [the plaintiffs] would 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 795 (quoting English v. Gen. Elec. Co.,496 U.S. 72, 79 (1990).

The Act's implementing regulations specified that the validity of a state rule or action

---

[10]*The Manufactured Housing Act contained preemption provision and saving clause provisions that were almost identical to those in the National Traffic and Motor Vehicle Safety Act that the Supreme Court considered in Geier.*

depended on whether the rule could be enforced or the action taken "without impairing the Federal superintendence of the manufactured home industry as established by the Act." 24 C.F.R. § 3282.11(d). The Tenth Circuit examined the language of the pertinent regulation and concluded that the plaintiffs' claim would not compromise federal superintendence of the industry. Because the Act "only require[d] '[a]t least one smoke detector [which is hard wired to the general electrical circuit],'" Choate, 222 F.3d at 795 (quoting 24 C.F.R. §3280.208(a), (d)), the court found that the regulation was "clearly a minimum rather than a maximum standard." *Id*. "The rule of law sought by [the plaintiffs] ... would not eliminate the chosen federal method of providing smoke detection in manufactured homes. It would simply increase the effectiveness of that method." *Id*. at 796.

The appellate court noted that the plaintiffs were not arguing that the manufacturers were "required to install battery-powered smoke detectors instead of hard-wired ones." *Id*. at 795. Geier was distinguishable in this regard because "[u]nder the plaintiffs' claim asserted in that case, manufacturers should have used airbags instead of the other options presented." *Id.* at 796. That result "would have effectively eliminated use of the other choices offered under the federal standards" and thwarted "the important identified federal objectives of having a variety and mix of passive restraint devices, and promoting a gradual passive restraint phase-in." *Id.*

The Tenth Circuit also noted that allowing the plaintiffs' claim to proceed was consistent with the stated purposes of the Manufactured Housing Act "' to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage

resulting from manufactured home accidents and to improve the quality and durability of manufactured homes." *Id.* (quoting 42 U.S.C. § 5401). The court found nothing in the legislative history to indicate that Congress wanted to preempt common-law tort actions. As the state action would not "be a material impediment to the federal action, or thwart[] the federal policy in a material way," the Tenth Circuit held that the plaintiffs' state law claim was not impliedly preempted. *Id.* (quoting Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 489 (10th Cir. 1998).

The plaintiff's challenge to FMVSS 205 is not as readily distinguishable from Geier as Choate. The result the plaintiff seeks in this case, if applied generally, would eliminate an option – tempered glass – under the federal standard. However, while the question is close, the court is persuaded by the Fifth Circuit's analysis in O'Hara that nothing in FMVSS 205's text or history or in NHTSA's statements about the regulation demonstrate that FMVSS 205, like FMVSS 208, "deliberately provided the manufacturer with a range of choices." Geier, 529 U.S. at 875. The defendants' argument to the contrary is not without some force, particularly in light of NHTSA's conclusion not to propose regulatory requirements for advanced glazing in part because of "the fact that advanced side glazing in some cases appears to increase the risk of neck injury." Notice of Withdrawal, 67 Fed.Reg. at 41,367. However, [b]ecause the text and commentary on FMVSS 205 show that it is best understood as a minimum safety standard," O'Hara, 508 F.3d at 763, the court concludes the plaintiff's products liability claims based on the tempered glass used in the side windows of the Sonata are not preempted. O'Hara, 508 F.3d at 758-63; *see* Sprietsma, 537 U.S. 64-68.

Accordingly, the defendants' motion for partial summary judgment [Doc. #71] is

**DENIED**.

**IT IS SO ORDERED**.

Dated this 14th day of January, 2010.

_____

JOE HEATON

UNITED STATES DISTRICT JUDGE