# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| MISTY RALEY, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-08-0376-HE |
| HYUNDAI MOTOR COMPANY, LTD., ET AL., | ) | |
| Defendants. | ) | |

## ORDER

Defendants Hyundai Motor Company and Hyundai Motor America (collectively Hyundai") filed a motion pursuant to Fed.R.Civ.P. 37(c) asking the court to preclude plaintiff from introducing at trial or otherwise relying upon "any expert opinion, data, testing, demonstration, or information" that plaintiff failed to disclose to Hyundai in accordance with Fed.R.Civ.P. 26(a)(2) and the court's scheduling order. Plaintiff has responded and also filed a motion asking the court to excuse the untimely disclosure of the supplemental expert report of Charles Dickerson. The court concludes defendants' motion should be granted in substantial part and plaintiff's motion should be denied. Defendants' motion will be addressed first, then plaintiff's.

Both motions must be considered in light of the procedural history of this case. This action was initially filed in federal court in October, 2004, and was dismissed by plaintiff for lack of jurisdiction. She refiled the case in state court in June, 2005. The trial was scheduled to begin October 1, 2007, after over two years of discovery and trial preparation. On September 20, 2007, after the state trial court granted Hyundai's motion to exclude one of

plaintiff's expert witnesses, plaintiff dismissed the action. In March, 2008, she refiled the case in federal court, asserting the same claims. The court entered a scheduling order on May 6, 2009, ordering, in response to defendants' request, that all discovery in the state case be deemed discovery in this lawsuit. As there had been extensive discovery conducted during the parties' preparations for the state trial, the court limited further discovery, unless leave of court was obtained, to expert discovery and prohibited any duplication of prior efforts.

In accordance with the scheduling order, plaintiff filed her final list of expert witnesses-in-chief and submitted her expert reports to defendants on September 15, 2009. Defendants contend plaintiff now seeks to introduce undisclosed expert information at trial. They claim plaintiff's experts, months after submission of their expert reports, between deposition sessions and/or subsequent to their depositions, have done additional work and/or reviewed additional information upon which they intend to rely at trial to support their opinions. Defendants seek the exclusion of the late-disclosed opinions, tests and demonstrations the experts have performed and/or information they received or reviewed to support their opinions.[1]

Plaintiff responds she has complied with the discovery rules and court orders. If there was any delay in her expert witness disclosures she asserts it was minimal and

---

[1]*Defendants contend that "much of the testing and demonstration was not even in existence" until after defendants' deadline for submitting responsive expert reports. Defendants' motion, p. 16.*

nonprejudicial. She argues that Fed.R.Civ.P. 26(a)(2)(B) requires a bibliography of an expert's materials and not their production and that it "has become customary in the Oklahoma legal community for the parties to present their expert for deposition voluntarily and to provide all of the materials that the expert may rely upon at the time of their deposition." Plaintiff's response, p. 1.

Plaintiff also contends that "[m]any of the documents, videos, or animations" that defendants challenge are not subject to disclosure as they are merely demonstrative aids. She argues that if any of the items defendants complain of furnish the basis for and/or support the opinions of any expert, they were provided to the defendants properly and timely under Rule 26(e)(2), which allows expert reports to be supplemented.

Citing numerous cases, generally without explaining their applicability to this action,[2] plaintiff claims defendants have not been prejudiced by the "minimal delay of their expert witness disclosures, if any." Plaintiff's response, p. 3. She claims that late disclosures are nonetheless sufficient (1) if the additional materials are produced immediately prior to or during the expert's deposition, as counsel can ask about them during the deposition, or (2) where the deficiencies are cured prior to the pretrial conference and in advance of trial, as that will provide the opposing party a reasonable opportunity to prepare to cross-examine the witness at trial. Plaintiff also excuses the late disclosures on the ground they are merely

---

[2]*Many of the cases appear to be factually distinguishable and/or inapplicable. For example, the plaintiff discusses cases demonstrating that courts disfavor the "[w]holesale exclusion of an expert witness." Plaintiff's response, p. 4. However, defendants are not asking the court to exclude the witnesses entirely, but rather to limit their testimony.*

3

impeachment materials, which Rule 26(a)(1)(A)(ii) specifically exempts from disclosure.

Resolution of defendants' motion requires the court, in part, to exercise its discretion. When making such judgment calls the court has taken into account that this case is not newly filed but has been ongoing for five years. Considerable expert discovery occurred before it was refiled in this court and the parties were allowed to conduct additional expert discovery here.[3] In these circumstances plaintiff's late disclosures cannot be excused on the basis she was pressed to prepare for trial. The court also has taken into account that this is not a matter of a late disclosure with respect to a single expert or even a few late disclosures with respect to several experts. Defendants' motion is based on multiple violations of Rule 26 with respect to multiple experts.

Rule 26 requires, among its expert disclosures, the production of an expert report which must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them; [and]
> (iii) any exhibits that will be used to summarize or support them.

Rule 26(a)(2). Plaintiff's explanations, defenses and excuses for her noncompliance with the Rule and this court's scheduling order are not convincing.

As for the asserted local practice of delayed disclosure, while some counsel may acquiesce in the production of expert materials at the expert's deposition, the Federal Rules

---

[3]*Three of the five experts who are the subject of defendants' motion were plaintiff's designated experts in the state court action.*

contemplate a different approach. The court also is not persuaded by the argument that the opposing party is not harmed when an expert discloses additional opinions and their bases during his deposition because the expert can be questioned about them at that time. In this type of case, when the subject matter is highly technical, counsel must often consult with the party's expert both to understand the opposing expert's opinions and their bases and to prepare to question the expert. That cannot occur when new materials are produced during the deposition. Defense experts also are precluded, when such late disclosures are made, from analyzing the new evidence in their own opinions/reports.

Contrary to plaintiff's suggestion, the harm was not mitigated in this case by the asserted production of the new materials sufficiently in advance of trial to enable defense counsel to prepare to cross-examine the various experts. There simply is too much new material produced by too many experts that was disclosed too late. Although defendant asked the plaintiff repeatedly, beginning in October 23, 2008, to designate her witnesses so their depositions could be scheduled, plaintiff waited until the deadline set by the scheduling order to provide defendants with her expert witness list.[4] Those experts were then unavailable for their depositions until mid-November, 2009.[5] *See* defendants' motion, p. 4. With the trial scheduled for February, defense counsel did not have sufficient time prior to

---

[4]*While the plaintiff was not required to disclose her experts earlier, her decision to wait until the deadline limited the options available to the court to ensure defendants are not prejudiced by plaintiff's late expert disclosures.*

[5]*From the deposition segments attached to the defendants' motion, it appears one deposition occurred on November 13, 2009, and the rest began on November 17, 19, 23, 25 and December 8, 2009.*

5

trial to prepare to defend against new expert materials.[6]

The court disagrees with plaintiff's characterization of some of the challenged exhibits as "demonstrative aids." Many appear to constitute substantive evidence, not mere aids. Regardless, their disclosure is required by Rule 26, which specifically refers to the production of "any exhibits that will be used to summarize or support" an expert's opinions. Rule 26(a)(2)(B)(iii).

The late disclosures also cannot be justified as supplementations permitted by Rule 26(e). The supplementations contemplated by the rule do "not cover failures of omission because the expert did an inadequate or incomplete preparation." Akeva LLC v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002). The court "cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions." *Id.* As Judge Friot of this court has remarked, "[expert] [r]eports that are preliminary do not suffice." Dixie Steel Erectors, Inc. v. Grove U.S., L.L.C., 2005 WL 3558663, at *6 (W.D.Okla. 2005).

The additional items also do not constitute "impeachment" materials. It was apparent from the argument of plaintiff's counsel at the Daubert hearing held on January 28, 2009, that counsel is blurring the distinction between evidence that is introduced to impeach an expert's testimony and evidence introduced in an attempt to demonstrate that the expert's opinion is

---

[6]*Extensive work has been done in this case the past several months. In addition to the depositions that have been conducted, numerous pleadings have been filed. Defendants filed a partial summary judgment motion and six Daubert motions. Plaintiff filed nine motions in limine.*

wrong.[7]

Several, if not all, of plaintiff's experts included the statement in their reports that they might "rely upon any of the documents and or things listed in the 'list of documents and things plaintiff's experts may rely upon' or in exhibits endorsed by the parties." *E.g.*, Friedman Report, p. 16, Doc. #89-2; Muzzy Report, p. 11, Doc. #90-2. Defendants assert, and the plaintiff does not refute, that the list is over one hundred pages long.[8] Contrary to plaintiff's assertion, reference to that list, without more, is not sufficient to allow the admission of otherwise undisclosed materials.[9]

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." The plaintiff has not demonstrated that her failure to disclose much of the evidence cited in the defendants' motion was justified. Her experts had ample time prior to September 15, 2009, to perform the research and testing necessary to form their opinions and prepare their

---

[7]*For example, plaintiff argues that her seat belt expert intends to use information learned during an inspection of plaintiff's vehicle that was conducted after he submitted his expert report to impeach "defense expert's opinions that the crack in the B-Pillar trim was caused by the latch plate being pushed into the B-Pillar trim ...." Plaintiff's response, pp. 11-12.*

[8]*If the referenced list is that filed as Doc. #58, it is 106 pages with multiple items listed on each page.*

[9]*The plaintiff relies on her seat belt expert's (Muzzy) citation of the list to support his reliance on a test involving a Sonata strapped to a flatbed truck. She asserts that "Item #20 on such list" – "Video showing movement of person in 1999 Hyundai Sonata simulating vehicle traveling downhill while being decelerated" – is the "'Sonata on Flatbed Truck'" demonstration. Plaintiff's response, p. 13, para. i. However, the testing occurred and the video was created in November, 2009, after Muzzy submitted his report.*

expert reports. Plaintiff has not argued that the additional opinions, data testing, analysis, or demonstrations could not have been included in their original reports. She also has not shown that the violations of Rule 26 were harmless. *See* Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (discussing factors to consider when determining whether a Rule 26(a)(2) violation is harmless).

Considering the type and amount of information that was not produced with the various experts' reports, it is apparent defendants have been prejudiced by the late disclosures. Curing the prejudice would require additional discovery. Defendants would have to redepose plaintiffs' experts and defense experts would need to revise their reports. Both would be costly and time-consuming. If plaintiff's experts were permitted to use the late disclosed evidence, the trial, set to commence in a few days, would have to be postponed. Defendants oppose a continuance,[10] which is understandable, as this case has been pending a long time due, in large part, to plaintiff's unilateral act of dismissing the state court action on the eve of trial. The extent of plaintiff's noncompliance with the disclosure deadlines is itself a strong indicator of the fact of, and extent of, prejudice to defendants. *See* Dixie Steel Erectors, Inc., 2005 WL 3558663, at *9 (It is inherently prejudicial in an expert-intensive case when an expert "accomplishes his most significant data acquisition and analysis only after he has rendered his report and the opposing experts have rendered their reports.").

---

[10]*The court asked defense counsel during one of the* Daubert *hearings if defendants would agree to a continuance.*

8

The extent of the rule violations, considered against the backdrop of the lengthy litigation history of this case, indicate that the late disclosures were willful. In <u>Dixie Steel Erectors, Inc.</u>, the court was confronted with a similar situation – the plaintiff's expert conducted significant post-report data acquisition and analysis.[11] While the court found it unnecessary to make a finding as to subjective bad faith, it nonetheless concluded:

> There is no room for doubt that plaintiff's highly experienced attorneys, as well as [the expert], knew what Rule 26(a)(2) required. The Rule 26 violations have been clearly established and are substantial. There is no contention, nor could there be, that the Rule 26 compliance issues now before the court arise from some oversight or unavoidable misfortune. Assuming the more benign of the alternatives discussed above under the heading of Ability to Cure, viz., that the violations were the default result of an unacceptably casual attitude toward Rule 26 expert disclosure, they were willful: when a veteran expert, working with experienced counsel, waits until more than three months have passed after the original report was rendered to do the most meaningful work in support of that report, the expert, and counsel, know exactly what they are doing.

<u>Dixie Steel Erectors, Inc</u>., 2005 WL 3558663 at *10. Those findings are equally applicable here.

The court accordingly concludes that plaintiff will not be allowed to introduce at trial, and her experts will not be allowed to testify regarding, any opinions, data, testing or other information that was disclosed after the submission of the pertinent expert's report. *See id.* Most of the evidence cited in defendants' motion will be excluded. Evidence plaintiff will be allowed to offer at trial, or on which her experts may rely, will be identified after the court

---

[11]*There is one difference between this case and <u>Dixie Steel Erectors, Inc</u> – the late disclosures in that case involved only one expert, not multiple experts.*

addresses some of the arguments plaintiff made in conjunction with specific witnesses.

Brad Mathison

Defendants seek to preclude multiple animations created by Brad Mathison. Plaintiff provided defendants with disks containing various graphics about an hour before Mathison's deposition on November 23, 2009. Mathison deposition, defendants' Exhibit 9, p. 86.[12] Plaintiff's counsel's told defense counsel that "[s]ome of the disks you may already have may be outdated, in that maybe he's completed more work on it. I would hate for you to waste time asking about a video that maybe he's updated to the current disk. I don't know that to be the case, but I know what's in the computer now are his up-to-date current stuff, maybe one or two you've never seen." *Id.* pp. 85-86. Mathison testified that his animations had "been a work in progress" and that he "would say it hasn't been until the last few weeks in which they were to the point that they are at now. *Id*. at pp. 25-26.

Plaintiff states Mathison has created only two motion graphic illustrations or animations – accident reconstruction and occupant kinematics – which were "combined to produce an animation of the accident reconstruction with the occupant inside the vehicle." Plaintiff's response, p. 19. She claims both were listed on the "List of Documents and Things Which Plaintiffs Experts May Rely Upon," which was delivered to defense counsel with plaintiff's experts' reports. She also claims her biomechanical engineer listed the occupant kinematics animation on her expert report and that her accident reconstructionist

---

[12]*The deposition was not completed and was reconvened on December 11, 2009.*

listed the accident reconstruction animation on his expert report. However, a party, by listing an exhibit, is not automatically allowed to introduce subsequently revised versions of that exhibit.[13] Regardless of whether there are many animations or, as plaintiff contends, only two taken from different camera positions, the animations referred to in para. 22(a) of defendants' motion will not be referred to, relied upon, or otherwise used by plaintiff at trial.[14] The remaining evidentiary items listed in para. 22 will also be excluded. The plaintiff's arguments for their use at trial either have been previously discussed and rejected (e.g. the animations or illustrations are merely demonstrative aids) or are unpersuasive (e.g. challenged animation is a "different presentation" of previously disclosed animations).

William Muzzy

Defendants seek to exclude test demonstrations performed by plaintiff's seat belt expert William Muzzy the night before his deposition. He used ball bearings on various seat belt buckles to "show[] the difference between a design ... of a buckle that cannot be inadvertently released with a 30-millimeter ball and those that can...." Muzzy depo., p. 103-

---

[13]*The court considers, in these circumstances, the combination of two animations to be a significant revision. See Mathison depo., pp. 122-23 (animation where "occupant kinematics going on simultaneously with the vehicle dynamics" was done "[i]n the last few weeks" before the deposition.)*

[14]*As late as December 31, 2009, plaintiff sent defendants "a DVD with contains a different version of the graphics animation created by Brad Mathison." Defendants' motion, Exhibit 2-G. Plaintiff refers to this animation in her response when she states that "motion animations may improve the view by removing a door so that the occupant can be seen more clearly or removing a dash so the occupant can be seen more clearly. However, the animation is still the same animation with perhaps one or more of the parts of the vehicle removed." Plaintiff's response, pp. 19-20. Judging from defendants' submissions today, February 9, 2010, plaintiff is continuing to revise the presentation of Mr. Mathison. [Doc. #188].*

11

04, defendant's Exhibit 13. In addition to arguing that she intends to use the tests as demonstrative aids only, plaintiff assets that Muzzy states in his report that he "'may also rely upon ... any document or thing listed on [the] 'list of documents and things plaintiff's experts may rely upon,'" plaintiff's response, p. 9, and that item #150 on the list was "'[v]arious seat belt buckles with recessed release mechanisms.'" *Id.* Plaintiff argues that "[i]t had to have been clear from such description that Mr. Muzzy, plaintiff's only seat belt expert would [use] such buckles with recessed release mechanisms to demonstrate to the jury that such seat belt buckles with recessed release mechanisms would not 'inadvertent release' ... while Ms. Raley's seat belt buckle would inadvertent release as it was not recessed." *Id*. The federal rules plainly do not contemplate requiring opposing counsel to cull through a list of over a thousand items and anticipate what an expert might do with one of them at some point in the future.

The plaintiff also cannot avoid the disclosure requirements of Rule 26 by claiming that an exhibit one of her experts relies upon to support his opinion was previously furnished to defendants in the conjunction with the state court case. Unless the expert disclosed with his expert report that he was relying on a previously provided exhibit, it will not be admitted. With the exception of two items discussed subsequently, the evidentiary items listed in para. 24, including the post-deposition materials, will be excluded.

Stephen Batzer

Plaintiff will not be allowed to introduce and Stephen Batzer will not be allowed to rely on or discuss any items on the hard drive produced three days before his deposition that

were not identified in and produced with his expert report. The slide show and calculations performed the morning of Batzer's deposition[15] also will be excluded.[16]

Admissible evidence

Plaintiff will be allowed to introduce and/or her experts will be entitled to rely on the following materials.

Muzzy

Assuming the disposition of the pending Daubert motion as to Mr. Muzzy does not render the question moot, he will be permitted to rely on the complete Exponent test reports and complete Guenther deposition testimony, which were cited in his expert report. The fact that he may only have reviewed excerpts provided to him by plaintiffs' counsel before his first deposition or second deposition does not preclude the admission of the reports, but may provide a basis for impeachment.[17]

Charles Dickerson/Plaintiff's motion to excuse untimely disclosure

In her motion plaintiff asks the court to excuse the untimely disclosure of Charles Dickerson's supplemental expert report. Dickerson is plaintiff's accident reconstruction expert. He performed the same role in the state court litigation, submitting three expert

---

[15] *Plaintiff states that Batzer does not intend to testify about the calculations during his direct examination.*

[16] *In her response plaintiff states that the rollover demonstration referenced in the slide show is listed (although with the wrong date) in Batzer's bibliography, which was furnished to defendants with his expert report. However, she fails to explain how this satisfies the requirements of Rule 26.*

[17] *The court assumes Muzzy did not, after having reviewed the complete test reports and deposition testimony, change his opinions.*

13

reports in that case.[18] In this lawsuit Dickerson submitted two reports dated September 2, 2009, and September 14, 2009.[19] During his deposition on November 13, 2009, Dickerson presented another report dated August 28, 2007, in which he "refined [his] analysis a little bit" through work he did to generate an animation video. Dickerson deposition pp. 5, 20, defendants' Exhibit 7. Dickerson states in a declaration attached to plaintiff's motion that he mailed the August 28, 2007, report to plaintiff's counsel shortly after it was prepared. Plaintiff's counsel denies ever having received the document, claiming he learned of its existence at the same time as defense counsel, at Dickerson's November 13, 2009, deposition.

In the previously undisclosed report, Dickerson reduced the distance from the beginning of the vehicle's rollover to the point of rest from 60 to 50 feet, reduced the speed of the vehicle at the beginning of the rollover from between 25 and 29 mph to between 21 and 25 mph, performed some roll rate calculations, which he had not done previously, and changed the location from which the vehicle exited the road. Defendants' Exhibit 7, pp. 34-35; 23-24; 42-43; Exhibit 8. Dickerson testified that he performed the roll rate calculations in response to the request of plaintiff's counsel to provide the information needed to produce an animation of the crash. Defendants' Exhibit 7, p. 43. At his deposition Dickerson presented calculations of the vehicle's speed and roll rates which he had made in conjunction

---

[18]*Defendants state that Dickerson was deposed twice before plaintiff dismissed the state court case.*

[19]*Dickerson's prior reports are dated September 29, 2006, August 9, 2007, and September 11, 2007.*

14

with his August report.  In their motion defendants seek the exclusion of (1) the August 2007, report, (2) the revised calculations, (3) the recalculated point of rest for the Raley vehicle, and (4) CDs relating to various tests.

Plaintiff makes essentially the same arguments in her motion that she made in her response to defendants' motion to exclude – the report's late production did not harm or prejudice defendants' trial preparation because they were able to depose Dickerson on the contents of the report, they will have another opportunity to cross-examine him about the report at trial, and they were provided with the information almost three months prior to trial. She also argues that because Dickerson referenced the vehicle crash reconstruction animation in his September 14, 2009, report, defendants' accident reconstruction would have known that the animation could not have been created without certain information and calculations, e.g. vehicle speed, rollover rate, which were the items in Dickerson's August 28, 2007, report.  Consequently, plaintiff asserts, defendants were on notice when they received Dickerson's September report, which referenced the video, that "if they desired such information they should inquire about such information at the time of Mr. Dickerson's deposition."  Plaintiff's motion, pp. 2-3.  With respect to the various tests on the CDs defendants seek to exclude, plaintiff claims defendants were provided some of the tests on the CDs in July, 2007, that two rollover tests were furnished 25 days before Dickerson's deposition, were referenced in another expert's report and were included on the "List of Documents and Things Which Plaintiffs' Experts May Rely Upon," and that two drop tests were produced 25 days before Dickerson's deposition.  Plaintiff asks the court, if it

determines the delay in the production of the Dickerson's August, 2007, report was not harmless, to continue the trial to allow defendants additional time to redepose Dickerson and prepare to cross-examine him at trial and to allow their experts to conduct any additional work needed.

The nondisclosure, at least with respect to the August, 2007, report, appears to have been inadvertent. However, like the rest of the materials defendants challenge in their motion, the information included in that document is not inconsequential. Defendants would be prejudiced if required to rebut that information at trial. Under other circumstances the court might follow plaintiff's suggestion and continue the trial. That option is not, though, appropriate here for reasons already discussed.

As plaintiff's counsel instructed Dickerson to provide the information needed to produce an animation of the crash to Brad Mathison, the graphics expert, counsel should have expected to receive a report containing that critical information. Dickerson depo. p. 43, defendants' Exhibit 7; Exhibit 8 ("Per your request, I have refined my reconstruction in order to provide data to Fearless Eye Inc. for the purpose of producing an animation of this crash."). When it was not forthcoming, plaintiff's counsel should have inquired about it. Considering all the pertinent circumstances, the court concludes it should be the plaintiff, and not the defendants, who must bear the consequences of the lost report. Plaintiff's motion will therefore be denied.

As for the other materials pertaining to Dickerson which defendants seek to exclude,

the revised calculations[20] and CD's, which were not disclosed in or produced with Dickerson's expert report, will not be introduced, referred to or otherwise relied upon by plaintiff at trial. Dickerson did, however, in his September 14, 2009, report discuss repositioning the Raley vehicle's point of rest. Defendants' motion, Exhibit 6-A; Plaintiff's motion to excuse, Exhibit 3. Dickerson will be allowed to testify regarding the information contained in that report.

Accordingly, defendants' motion to exclude [Doc. #99] is granted in part and denied in part. Plaintiff's motion to excuse untimely disclosure [Doc. #162] is denied. Defendants' motion is granted with respect to all items challenged except for (1) the complete Exponent test reports and complete Guenther testimony, cited in Muzzy's expert report and (2) the information included in Dickerson's September 14, 2009 report.

Orders have not been issued with respect to three of defendants' <u>Daubert</u> motions. The court's decisions on those motions may impact or moot some of the rulings in this order.

**IT IS SO ORDERED**.

Dated this 9th day of February, 2010.

_[signature]_
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[20]*While unclear, it appears some of the calculations may have been in the undisclosed report and others were produced for the first time at Dickerson's deposition. Regardless, as defendants were unaware of their existence until the deposition, they will be excluded.*